UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**BRIAN EDWARD HAMILTON**,

Debtor.

Case No. **08-60225-13**

## MEMORANDUM of DECISION

At Butte in said District this 22nd day of January, 2014.

In this Chapter 13 bankruptcy, after due notice, a hearing was held November 12, 2013, in Billings on the Debtor's Motion for Contempt ("Motion") (Document No. 51) against the Internal Revenue Service ("IRS"). The IRS filed a response in opposition and was represented at the hearing by assistant United States Attorney Victoria Francis ("Francis") of Billings, Montana. Debtor Brian E. Hamilton appeared at the hearing and testified, represented by attorney James A. Patten ("Patten") of Billings, Montana. The Chapter 13 Standing Trustee, Robert G. Drummond of Great Falls, Montana also testified, as did attorney W. Scott Green ("Green"), Carol Orr, Mark Howard and Lori Fleming. Debtor's Exhibits 1 through 8, and the IRS's Exhibits A through Q were admitted without objection. At Debtor's request, the Court took judicial notice of: Debtor's Amended Chapter 13 Plan filed on May 19, 2008; the Order confirming Debtor's Plan entered May 21, 2008; the Chapter 13 Standing Trustee's final report and account filed on June 21, 2013; and the IRS's amended Proof of Claim filed on June 16, 2008. At the conclusion of the hearing, the Court granted the parties time to file post-hearing briefs and took the matter under advisement. Debtor filed a post-hearing brief on December 2, 2013, and the IRS filed a

1

response on December 9, 2013. This matter is ready for decision. For the reasons set forth below, Debtor's Motion will be denied without prejudice.

## FACTS

Debtor is the owner of Langer's Inc. Langer's Inc. was, and may still be, an employer. The Internal Revenue Code requires employers to withhold employees' income tax and Social Security contribution from each employee's paycheck. I.R.C. §§ 3402(a), 3102(a). Employers hold these taxes in trust for the federal government, I.R.C. § 7501(a), and they are commonly called "trust fund taxes." Individuals responsible for collecting trust fund taxes that willfully fail to collect, pay over, or account for trust fund taxes can be assessed a "trust fund recovery penalty" equal to the tax evaded. I.R.C. § 6672(a).[1] When Langer's Inc. failed to pay its payroll taxes in 2006, 2007, and 2008, Debtor became liable for such taxes pursuant to 26 U.S.C. § 6672.

Debtor filed a voluntary Chapter 13 petition on March 10, 2008. Debtor filed his Schedules and Statement of Financial Affairs on March 25, 2008. Debtor's Schedule F lists unsecured nonpriority claims owing to the IRS in the amounts of $22,038.93 for "IRC 6672 taxes for periods ending 12/31/06, 3/31/07, 6/30/07, and 9/30/07," and $1,654.00 for "2007 Form 1040 tax for period ending 12/31/07." The amounts due under 26 U.S.C. § 6672, also called trust fund recovery penalties, had not been assessed, and were not assessed until November 16, 2009.

---

[1] Section 6672 provides in pertinent part:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title [a "responsible person"] who willfully fails to . . . account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

2

Because the trust fund recovery penalties had not been assessed, IRS filed amended Proof of Claim No. 3-3 on June 16, 2008, asserting an estimated claim of $22,992.93. Of the foregoing amount, $1,108.35 was for interest, $1,054.00 was for income taxes assessed 5/19/2008, and the balance of $20,830.58 was for trust fund employment taxes for the fourth quarter of 2006 and the first three quarters of 2007. The IRS's amended Proof of Claim No. 3-3 did not include an estimate of the trust fund recovery penalties due for the tax periods ending December 31, 2007, March 31, 2008, June 30, 2008, and September 30, 2008, because these latter trust fund recovery penalties were not assessed until March 31, 2008, July 7, 2008, September 22, 2008, and December 15, 2008, respectively.

On May 19, 2008, Debtor filed an Amended Chapter 13 Plan Dated May 19, 2008, to which the Trustee consented on that same date. Debtor's Amended Chapter 13 Plan was confirmed on May 21, 2008. Paragraph 2(d) of Debtor's confirmed plan provides that after payment of administrative claims, impaired secured claims and unimpaired secured claims, that "the Trustee shall pay allowed claims entitled to priority in such order as specified in 11 U.S.C. § 507." The Chapter 13 Standing Trustee filed on April 1, 2013, a notice that Debtor had completed his Chapter 13 Plan payments. Debtor's discharge was entered April 23, 2013. The Chapter 13 Standing Trustee's Final Report and Account filed June 21, 2013, reflects that the Trustee paid $22,992.93 to the United States Treasury.

In September of 2012, Langer's Inc. received notices from the IRS regarding the payroll tax liability for the fourth quarter of 2006 and the first three quarters of 2007. Debtor, believing that his payments to the IRS, through his plan payments to the Trustee, were being applied to Langer's Inc.'s trust fund obligation, retained attorney Green to contact the IRS. Green requested

3

from the IRS transcripts of Langer's, Inc. account, which transcripts the IRS provided. Based upon those transcripts, Green wrote the IRS a letter dated February 5, 2013, explaining:

> The Internal Revenue Service has only applied $15,482.99 of the $22,992.93 paid by Mr. Hamilton to Langers, Inc., employment tax liability. In 4th quarter 2006, the Service applied $631.14 to Langers, Inc. In 1st quarter of 2007, the Service applied $2,070.93 to Langers, Inc. In 2nd quarter of 2007, the Service applied $7,295.78 to Langers, Inc. and in 3rd quarter of 2007, the Service applied $5,485.14 to the liability. In 4th quarter of 2007, and the first there quarters of 2008, no payments were applied by the IRS to Langers, Inc., liability.

Green's letter of February 5, 2013, was sent to 1973 N. Rulon White Blvd, MS 6737, Ogden, UT 84404. Green provided a copy of the foregoing correspondence to attorney Francis at the Montana U.S. Attorney's Office in Billings, Montana.

Thereafter, following completion of his Chapter 13 plan payments and a discharge of his debts, Debtor received notices dated May 27, 2013, of the IRS's "Intent to seize your property or rights to property," noting Debtor's continuing liability for unpaid taxes for the quarters ending March 31, 2007, in the amount of $1,540.29, September 30, 2007, in the amount of $843.58, December 31, 2007, in the amount of $5,857.03, and December 31, 2006, in the amount of $2,464.99. Debtor gave the notices to Green and on June 5, 2013, Green sent Francis a letter explaining:

> On February 5, 2013 I sent you a courtesy copy of the letter that I sent to the Internal Revenue Service because the Internal Revenue Service had failed to apply certain payments made in the Chapter 13 bankruptcy to liabilities of the corporation as they are required. In response, the Internal Revenue Service sent out Notice of Intent to Levy, copies of which are attached hereto, to Mr. Hamilton for the taxes that were paid in full under the bankruptcy plan.
>
> In that the Internal Revenue Service is attempting to collect taxes that were paid in full under the Chapter 13 plan, it is going to be necessary that we take immediate action to prevent damage to Mr. Hamilton.

4

>      Please get back to me as soon as possible to see if there is any way to avoid re-opening the bankruptcy and having the court deal with the Internal Revenue Service.

Francis forwarded Green's June 5, 2013, letter to the IRS Insolvency Unit in Denver, Colorado, and instructed Green to contact the Insolvency Unit. Before Debtor's case was closed, Debtor filed on June 19, 2013, the pending Motion for Contempt.

Sometime after June 5, 2013, Green contacted, by telephone, the Insolvency Unit. Green was told that a portion of the trust fund recovery penalty was still owed and that the IRS would not cease its collection efforts. The parties learned that because the pre-petition trust fund recovery penalties were not assessed until November 16, 2009, a portion of the payments received by the IRS from the Trustee were flagged by the IRS's computer system as overpayments. The overpayments were then subject to the Treasury Offset Program, authorized under 26 U.S.C. § 6402(c).[2] Under said Program, the State of Montana Child Support Enforcement Division certified that Debtor owed past child support. Thus, under the Treasury Offset Program, $4,102.54 of the payments made by the Trustee to the IRS were forwarded by

---

[2] Subsection 6402(c) provides:

> **Offset of past-due support against overpayments**. – The amount of any overpayment to be refunded to the person making the overpayment shall be reduced by the amount of any past-due support (as defined in section 464(c) of the Social Security Act) owed by that person of which the Secretary has been notified by a State in accordance with section 464 of such Act. The Secretary shall remit the amount by which the overpayment is so reduced to the State collecting such support and notify the person making the overpayment that so much of the overpayment as was necessary to satisfy his obligation for past-due support has been paid to the State. The Secretary shall apply a reduction under this subsection first to an amount certified by the State as past due support under section 464 of the Social Security Act before any other reductions allowed by law. This subsection shall be applied to an overpayment prior to its being credited to a person's future liability for an internal revenue tax.

the IRS to the State of Montana Child Support Enforcement Division. Once Debtor's Child Support Enforcement obligation was paid in full, the Montana Child Support Enforcement division refunded $427.00 directly to the Debtor.

Debtor testified that he was indeed in arrears on his child support obligation at the time he filed his bankruptcy petition. The Montana Child Support Enforcement division did not file a proof of claim in Debtor's case, but Debtor made arrangements to catch up the delinquent payments outside his confirmed Chapter 13 plan.

Once the trust fund recovery penalties were assessed in November of 2009, the IRS began applying Debtor's Chapter 13 plan payments to such taxes. The IRS has agreed to abate the trust fund recovery penalties still owing as a result of the payments it received but forwarded to the State of Montana Child Support Enforcement Division under the Treasury Offset Program.

The trust fund recovery penalties and child support obligations are both excepted from discharge. Thus, a portion of the monies that should have been applied to Debtor's nondischargeable trust fund recovery penalties, were instead applied toward Debtor's nondischargeable child support obligation. Debtor has not attempted to exhaust his administrative claim as spelled out in 26 C.F.R. § 301.7433-2.

## DISCUSSION

Debtor asks this Court to hold the IRS "in contempt for its willful and continuing failure to apply Chapter 13 plan payments in accordance with the confirmed Chapter 13 Plan and its violation of the discharge injunction." The IRS asserts three arguments in opposition to Debtor's Motion. First, the IRS argues Debtor's remedies fall under 11 U.S.C. § 524(i), and that the application of the payments received by the Trustee was a mistake in conflict with the normal

6

procedures of the IRS.  Second, the IRS argues that Debtor has not exhausted his administrative remedies as required under 26 U.S.C. § 7433(e).  Finally, the IRS maintains that it was not intending to cause harm or intending to violate Debtor's discharge.

At the hearing, Debtor conceded that he must exhaust his administrative remedies in order to recover damages from the IRS for any contempt.  Thus, even though Debtor previously requested compensation for his attorneys fees and costs, Debtor is only asking at this time that the IRS be held in contempt.

Debtor, citing only 11 U.S.C. § 524(a)(3), requested in his Motion filed June 19, 2013, at docket entry no. 51, that this Court hold Debtor in contempt and compensate Debtor for his attorneys fees and costs.  In his Response Brief in Support of an Order of Contempt filed at docket entry no. 71, Debtor cites § 524(a)(2), and not § 524(a)(3).  Whether Debtor is seeking a determination of contempt under § 524(a)(2) or § 524(a)(3), or perhaps both, the IRS argues that Debtor must exhaust his administrative remedies before proceeding with his contempt action. Debtor counters that "[c]ontempt, and damages for contempt, are two different things.  A contempt can occur in the absence of damages."  *See* Response Brief in Support of an Order of Contempt, docket entry no. 71, p.7.  Debtor also argues in that same Response Brief that "[t]he IRS should be sanctioned by and [sic] order of contempt when it violates the rules of the Bankruptcy Code and the orders of this Court."  *Id*. at p.9.  The IRS counters that this Court lacks jurisdiction to determine any damage award at this time and that even if this Court had jurisdiction, Debtor's motion is fundamentally flawed because the trust fund recovery penalties were never discharged in Debtor's bankruptcy.

26 C.F.R. § 301.7433-2, titled "civil cause of action for violation of section 362 or 524 of

7

the Bankruptcy Code," provides in relevant part:

> (a) In general. (1) If, in connection with the collection of a federal tax with respect to a taxpayer, an officer or employee of the Internal Revenue Service willfully violates any provision of . . .section 524 (relating to discharge) of title 11, United States Code, or any regulation promulgated under such provision, the taxpayer may file a petition for damages against the United States in Federal bankruptcy court.
>
> * * *
>
> (d) No civil action in federal bankruptcy court prior to filing an administrative claim--(1) In general. Except as provided in paragraph (d)(2) of this section, no action under paragraph (a)(1) of this section shall be maintained in any bankruptcy court before the earlier of the following dates--
>
>> (i) The date the decision is rendered on a claim filed in accordance with paragraph (e) of this section; or
>>
>> (ii) The date that is six months after the date an administrative claim is filed in accordance with paragraph (e) of this section.
>
> (2) When administrative claim filed in last six months of period of limitations. If an administrative claim is filed in accordance with paragraph (e) of this section during the last six months of the period of limitations described in paragraph (g) of this section, the taxpayer may petition the bankruptcy court any time after the administrative claim is filed and before the expiration of the period of limitations.
>
> (e) Procedures for an administrative claim--(1) Manner. An administrative claim for the lesser of $1,000,000 or actual, direct economic damages as defined in paragraph (b) of this section shall be sent in writing to the Chief, Local Insolvency Unit, for the judicial district in which the taxpayer filed the underlying bankruptcy case giving rise to the alleged violation.[3]

The foregoing regulation sets forth the administrative process for seeking redress for violations of § 524 by the IRS. For instance, a debtor must send a written administrative claim for damages to the Chief, Local Insolvency Unit, for the judicial district in which the debtor filed

---

[3] The IRS contends, and Debtor does not dispute, that the proper address for the Chief of the Local Insolvency Unit for Montana is 1999 Broadway, Mail Stop 5012, Denver, CO 80202.

the underlying bankruptcy case. 26 C.F.R. § 301.7433–2(e)(1). The administrative claim is to include, among other things, a description of the alleged violation and the injuries incurred by the debtor. 26 C.F.R. § 301.7433–2(e)(2). Debtor has not complied with the foregoing. In addition, with one exception not applicable to this case, no civil action is to be maintained in the bankruptcy court for violation of § 524 before either a decision is rendered on the administrative claim or six months have passed since the administrative claim was filed. 26 C.F.R. § 301.7433–2(d).

Debtor's request for contempt is a civil action that simply cannot be brought before this Court because Debtor has not yet filed an administrative claim with the Chief, Local Insolvency Unit, 1999 Broadway, Mail Stop 5012, Denver, CO 80202. Debtor's Motion for Contempt is premature at this time.

In accordance with the foregoing, the Court will enter a separate order providing as follows:

IT IS ORDERED Debtor's Motion for Contempt filed June 19, 2013, at docket entry no. 51 is denied without prejudice.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana